ROBERT T. EGLET, ESQ.
Nevada Bar No. 3402
TRACY A. EGLET, ESQ.
Nevada Bar No. 6419
**EGLET ADAMS**
400 South Seventh Street, Suite 400
Las Vegas, NV 89101
Telephone: (702) 450-5400
Facsimile: (702) 450-5451
reglet@egletlaw.com
teglet@egletlaw.com
eservice@egletlaw.com

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

BELLA VISTA LLC, A NEVADA LIMITED COMPANY LIABILITY, GREENFIELD & COMPANY INC., A NEVADA CORPORATION; LIFE REAL ESTATE LLC, A NEVADA LIMITED LIABILITY COMPANY; MOBILE MEDIC CPR LLC, A NEVADA LIMITED COMPANY; AND DT GROUP LLC, AN ILLINOIS LIMITED LIABILITY COMPANY.

PLAINTIFFS,

vs.

THE PEOPLE'S REPUBLIC OF CHINA; NATIONAL HEALTH COMMISSION OF THE REPUBLIC OF CHINA; MINISTRY OF EMERGENCY MANAGEMENT OF THE PEOPLE'S  REPUBLIC OF CHINA; MINISTRY OF COMMUNITY AFFAIRS OF THE PEOPLE'S REPUBLIC OF CHINA; THE PEOPLE'S GOVERNMENT OF HUBEI  PROVINCE; AND THE PEOPLE'S GOVERNMENT OF THE CITY OF  WUHAN, CHINA.;

DEFENDANTS.

CASE NO.: 2:20-cv-00574

**CLASS ACTION COMPLAINT**

**JURY DEMAND**

Plaintiffs, Bella Vista Inc., a Nevada Limited Company Liability; Greenfield & Company Inc., a Nevada Corporation; Life Real Estate LLC., a Nevada Limited Liability Company; Mobile Medic CPR LLC, a Nevada Limited Company and DT Group, LLC, an Illinois Limited Liability Company (collectively, "Named Plaintiffs"), on behalf of themselves and on behalf of all those similarly situated, by and through their undersigned counsel, EGLET ADAMS, hereby bring this class action against the People's Republic of China ("the PRC"); National Health Commission of the People's Republic of China; Ministry of Emergency Management of the People's Republic of China; Ministry of Civil Affairs of the People's Republic of China; The People's Government of Hubei Province; and the People's Government of the City of Wuhan, China (collectively the "Defendants"), for damages and other relief, and hereby allege as follows:

## INTRODUCTION

1.      This class action complaint is brought by the Named Plaintiffs, which consist of "small businesses" in the United States, including the State of Nevada, and as defined by the U.S. Small Business Administration, for monetary and related damages sustained as a result of the coronavirus pandemic, against the Defendants, the PRC and its various government entities, which handled and managed the response to the discovery of the coronavirus, and, upon information and belief, engaged in a cover-up of the coronavirus pandemic in China generally, and within Hubei Province and the City of Wuhan, thereby causing and/or contributing to the subsequent spread of the coronavirus all over the world, including to the United States of America ("US") and the State of Nevada.

2.      The PRC is the world's most populated country with over 1.3 Billion people. The PRC is also the world's second largest economy.  As a result, the PRC has substantial economic and trading relationships with almost every country in the world, including the US.

3.      In 2019, the US trade with the PRC was approximately $555 Billion.

4.      In 2018, approximately 3 Million tourists visited the US from the PRC. In that same year, approximately 2 Million US tourists visited the PRC.

2

5.      The extensive business, trade and tourism relationships between the PRC and the US require honesty, accurate disclosure and transparency between the two counties, especially on any health issue or condition, which can cause a pandemic.

6.      The world, including the US and the State of Nevada, has been devastated in recent months by the new strain of the coronavirus, more commonly known as COVID-19, and the mutations that have occurred with this "new" virus.

7.      Upon information and belief, this "new" coronavirus began in Wuhan, Hubei Province, China on or about November 17, 2019, and subsequently spread throughout the world, including to the US and the State of Nevada. Reported information suggests that the first case occurred in the Human Wholesale Market, in Wuhan, China. Therefore, the virus has zoonotic origin.

8.      Shortly after November 17, 2019, the PRC and the other Defendants knew, or should have known, that COVID-19 was a "new" dangerous, contagious, and deadly virus because many Chinese citizens who contracted the virus were getting very sick, and some were dying. Moreover, DNA samples taken from these very sick and dying people confirmed that this was a "new" virus for which there was no vaccine or cure.

9.      Shortly after November 17, 2019, the PRC and the other Defendants received credible scientific evidence confirming that this "new" virus, which first emerged in Wuhan, China was very contagious, deadly and capable of causing a pandemic.

10.      Upon receiving this disturbing scientific evidence and data, the PRC and the other Defendants had a responsibility to its own citizens, the World Health Organization ('WHO'), and the international community, including the citizens and businesses of the US and those in the State of Nevada, to immediately disclose this evidence.

11.      Instead of disclosing this evidence, the PRC and the other Defendants engaged in a campaign of misinformation and lies. Upon information and belief, they engaged in a campaign of intimidating and arresting any Chinese doctors, scientists, attorneys and/or reporters who tried to alert the public about this dangerous "new" coronavirus.

12.     As a result of the actions and inactions of the PRC and the other Defendants, the international community, including the named Plaintiffs, did not know about the severity and dangers of this "new" virus.

13.     When the coronavirus reached the US it quickly led to an unprecedented health crisis. This virus has infected many thousands of Americans, though it is suspected that there are exponentially more Americans unknowingly carrying the virus, and has made many of those Americans very sick. As of March 23, 2020, over 42,000 people in the US have been infected with this new coronavirus, and over 374,000 in the world have been infected.  Significantly, this virus is so contagious it took several weeks for the first 100,000 cases (most of which were in China) to occur; the next 100,000 global cases occurred in the following 12 days; and it took just 3 days for the documented cases to go from 200,000 to 300,000 cases.

14.     The conduct and misconduct of the Defendants has caused substantial monetary and related damages to the Named Plaintiffs and Class Members.  These damages exceed hundreds of billions of dollars, and such damages will only increase in the future because many of these small businesses have been ordered closed or are working at reduced capacity.  The Defendants' conduct and misconduct has caused and will continue to cause the named Plaintiffs and Class Members, to suffer, among other things, reduced revenues, reduced profits and/or the closure of many US "small businesses".

## PARTIES

15.     Plaintiff Bella Vita LLC, is a Nevada limited liability company, which operates a "small business" restaurant in Nevada. Currently this company's restaurant is closed because of the coronavirus pandemic.

16.     Plaintiff Greenfield & Company Inc., is a Nevada Corporation, which operates a wholesale "small business" that sells and buys flowers in several states, including Nevada. Currently this company's business is closed because of the coronavirus.

17.     Plaintiff Life Real Estate LLC is a Nevada Limited Liability Company, which is a "small business" that does real estate transactions and management and has offices in Nevada and

4

97 independent brokers. Currently, this company is experiencing a substantial reduction in income and profits because of the coronavirus.

18.     Plaintiff Mobile Medic CPR Training LLC, is a Nevada limited liability company, which is a "small business" that provides advance CPR services to medical and non-medical businesses in the State of Nevada. Currently, this company is experiencing a substantial reduction in income and profits because of the coronavirus.

19.     Plaintiff DT Group LLC, is an Illinois Limited Liability Company, which is a "small business" and acts as a real estate general contractor, having offices in the States of Illinois and Nevada. Currently, this company is experiencing a substantial reduction in income and profits because of the coronavirus.

20.     Plaintiff Class Members are all "small businesses" in the United States which are similarly situated to Named Plaintiffs. According to the United States Small Business Administration ("SBA") these "small businesses" number over 32 Million businesses, which each have fewer than 500 employees. Moreover, in the State of Nevada there are over 177,000 small businesses alone.

21.     The People's Republic of China ("the PRC") is a foreign nation.

22.     The National Health Commission of the People's Republic of China is the administrative government body and executive department under the PRC which is responsible for monitoring and formulating health policies in Mainland China.

23.     The Ministry of Emergency Management of the People's Republic of China is the administrative government body that coordinates emergency management, including health issues, within the PRC.

24.     The Ministry of Civil Affairs of the People's Republic of China is the administrative government body responsible for social and administrative affairs.

25.     The People's Government of Hubei Province ("Hubei Province") is a foreign province and administrative head of Hubei Province in the PRC.

26.     The People's Government of City of Wuhan, China ("Wuhan") is a foreign city and administrative head of the City of Wuhan, China.

**JURISDICTION AND VENUE**

27.     This Court has subject matter jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005 (CAFA) and 28 U.S.C. § 1332(d). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000; there exists minimal diversity between parties; and there are over 32 Million US "small businesses" which are putative class members.

28.     This Court further has jurisdiction under the Foreign Sovereign Immunities Act (FSIA) of 1976, 28 U.S.C. §§ 1602 *et seq*., and particularly the exceptions of § 1605(a) (2) (for acts outside the territory of the United States in connection with a commercial activity of the Defendants, that cause a direct effect in the United States), and § 1605(a) (5) (for money damages for loss of property, occurring in the United States and caused by the tortious acts or omissions of Defendants, or of any official or employee of Defendants while acting within the scope of his office or employment).

29.     There is exception to jurisdiction under the FSIA for "discretionary acts" because the Defendants have acted clearly contrary to the precepts of humanity, transparency, and/or their conduct is prohibited by the internal laws of the PRC and its provincial and municipal governments.  Moreover, on March 19, 2020 the PRC admitted that the Wuhan police acted improperly when they intimidated and forced Dr. Li Wenliang, who was a whistle blower that exposed the existence and dangers of this "new" virus, to sign a false statement.  This coerced false statement in effect had Dr. Wenliang deny that a "new" virus had been discovered and was killing people in China.  Then, the Defendants used this false statement to mislead the international community, including the US, regarding the seriousness of this "new" virus and the immense catastrophe that it could cause to countries, people and businesses all over the world.

30.     This Court has personal jurisdiction over the Defendants because they have caused tortious harm to the Named Plaintiffs and Class Members, throughout the United States, and in this District, and have sufficient contacts in Nevada and the rest of the US to render the exercise of jurisdiction by this Court permissible.

31.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) (2) and (c) because a substantial part of the events or omissions giving rise to Named Plaintiffs' and Class Members' claims occurred in this District.

32.     All conditions precedent to the filing of this lawsuit have been met and/or waived by the conduct of Defendants.

## GENERAL ALLEGATIONS

### *The Outbreak of COVID-19*

33.     According to the US Center for Disease Control ("CDC"), as of March 22, 2020, there are over 330,000 confirmed worldwide cases, over 14,000 deaths, and an exponentially large quantity of undiagnosed cases.  These numbers are expected to increase exponentially in the coming weeks and months.

34.     According to the CDC as of March 22, 2020, there are over 32,000 confirmed cases in the US and over 414 deaths.  In the state of Nevada alone there are over 190 COVID-19 related illnesses and 2 deaths.  These numbers are expected to rise exponentially in the coming hours, days and weeks as more people get tested in the US.

35.     Over 1 Million US "small businesses" have been forced to close or have been forced to substantially reduce their operations.  These numbers are expected to rise as Governors, County Commissioners and City Mayors all over the US are ordering small Businesses to close or reduce their operations.

36.     This "new" virus causes cold and flu like symptoms that often lead to pneumonia and severe respiratory distress that can be fatal.  It is several times more deadly than the seasonal flu virus.  Significantly, this "new" virus has already mutated several times.  So, currently we have two strains of this virus- strain S and Stain L.

37.     Between November 17, 2019 - when the first case of this new virus was first detected until February 11, 2020, when the WHO declared the COVID-19 outbreak a pandemic, the PRC and the other Defendants intentionally mislead the international community, including the named Plaintiffs, about the coronavirus and its devastating medical and economic effects. Moreover, the Defendants covered-up the severity of this heath pandemic.  In order to effectuate

7

this cover-up, it is believed that Defendants intimidated doctors, scientists, journalists, and lawyers and ordered the destruction of medical testing and data, which would have exposed Defendants' attempted cover-up to the public.  While Defendants took theses actions, the Defendants told the public that "everything was under control".  In truth, the medical crisis was out of control.

### The Effects of the COVID-19 Outbreak and China's Role

38.     Because of the rising threats, the United States has barred plane travel from China, the European Union, and most countries in the world. The New York Stock Exchange has suffered its worst losses since the great depression. US stocks have lost almost 28% of their value, resulting in almost 5 Trillion Dollars in lost wealth. Conventions, functions and events have been cancelled. The playing seasons for all professional sports in the US have been suspended indefinitely. Hotels and casinos in most states, including in Nevada, have been closed. Shows and cinemas have been closed. Many restaurants have been closed. Tourism has been decimated.  Millions of small businesses are closed. For the businesses that remain open, many of them cannot get supplies or equipment, and/or they have few customers. Many supplies like toilet paper, hand sanitizers, face masks, and medicines are difficult to find.

39.     The PRC and other Defendants, are part of a totalitarian governmental system.  Part of this system involves exaggerating good news, while suppressing bad news. The discovery of a "new" contagious and deadly virus that started in Wuhan, China was bad news. International treaties, agreements and common decency required the PRC and the other defendants to inform the international community shortly after November 17, 2019 about this "new" dangerous, contagious and deadly virus.  They did not. Instead, they engaged in a campaign of falsehoods, misinformation, cover-up and destruction of evidence.

40.     The PRC and the other Defendants failed to timely report the outbreak, under reported the severity of the virus, underreported the deaths caused by COVID-19, and failed to contain the outbreak despite knowing the seriousness of the situation.

41.     President Trump issued an Executive Order banning "banning foreign nationals other than the immediate family of US citizens and permanent residents who have travelled in China in the past 14 days" from entering the US effective February 2, 2020.  However, the PRC

and Defendants, from November 17, 2019 to February 2, 2020, allowed thousands of people from Wuhan to travel to the US, although they knew, or should have known, that there was a high likelihood that many of these people carried the very contagious "new" virus and would contaminate many people living in the US.

**42.**     The Defendants also committed the following acts and omissions:

**a.**     People in Wuhan started to die from the virus in December, 2019 and the Defendants suppressed and/or under-reported this information;

**b.**     On December 27, 2019, Dr. Zhang Jixian, at the Hubei Provincial Hospital of Integrated Chinese and Western Medicine, sounded the alarm about a "new' disease that had already affected 180 patients, and the Defendants suppressed this information;

**c.**     From December 26-30, 2019, the first evidence of the new virus was revealed through Wuhan patient data, which had been sent to multiple Chinese genomics companies. During this time period, the Hubei Health Commission ordered one of the genomics companies to stop testing on the new virus and to destroy all the data. Simultaneously, the Defendants pressured the press not to report these facts;

**d.**     On December 30, 2020, Dr. Li Wenliang ("Dr. Li") sent a message to his former classmates about a "new" virus infecting Wuhan residents and urged them to be careful.

**e.**     On December 31, 2019, which was almost 1 ½ months after the first reported case, Chinese officials finally alerted the WHO about pneumonia with an "unknown cause" affecting the health of people in Wuhan.  This disclosure was misleading because the destroyed data showed that the real cause was a newly discovered virus and it was far too late;

**f.**     On December 31, 2019, the Chinese Internet authorities started to censor all social media references to this new disease and the government's response;

**g.**     On December 31, 2019, the Wuhan seafood market, where the virus allegedly first broke out, was finally closed. Under the guise of "disinfecting" the area, governmental authorities intentionally failed to have doctors inspect the area and failed to swab individual animal cages or to draw blood from the workers in order to determine the "real" source of the virus;

9

**h.** On January 1, 2020, eight doctors, including Dr. Li, who had been disclosing the "new" virus, were detained and questioned by the police, who condemned them for "making false statements on the internet" about a new virus;

**i.** On January 3, 2020, China's National Health Commission issued a gag order on matters regarding the "new" virus, and ordered pneumonia samples from affected people to be moved to designated facilities or destroyed. The same Commission ordered medical institutions not to publish anything about this "unknown disease";

**j.** On January 5, 2020, Professor Zhang Yongzhen of the Shanghai Public Health Clinical Center provided the genomic sequence of the "new" virus to Chinese authorities;

**k.** On January 9, 2020, the WHO released a statement about the cluster of pneumonia cases in Wuhan, suggesting the cases were attributable to a new coronavirus, because they ruled out SARS, MERS, influenza, bird flu, and other known pathogens;

**l.** On January 9, 2020, after being outed by the WHO, the Defendants finally announced the first "official death" of a coronavirus patient and that 59 additional people had coronavirus in Wuhan;

**m.** On January 10, 2020, the Defendants' agent and health expert, Wang Guangfa, told the Chinese state's China Central Television that the pneumonia was "under control" and downplayed the virus as a "mild condition";

**n.** On January 14, 2020, the WHO disclosed that there may have been human to human transmission of the "new" virus;

**o.** On January 14, 2020, Chinese police started detaining journalists trying to report the outbreak at the Wuhan Jinyintan Hospital. These journalists were also forced to delete any footages taken, and they were forced to give their phones to the police;

**p.** On January 15, 2020, Li Qun, the head of the Chinese CDC (Center for Disease Control) mislead the public by stating that the risk of human to human transmission "was low";

**q.** On January 18, 2020, despite the known COVID-19 crisis and its high level of contamination, the City of Wuhan held a "potluck" banquet for 40,000 people to try and break a world record;

**r.**      On January 20, 2020, Dr. Zhong Nanshan, a top Chinese doctor who previously helped fight the SARS epidemic, stated during a television interview that COVID-19 was spreading from person to person. This same doctor later stated that if the Defendant PRC had acted in December 2019 or early January 2020 to contain the virus, "the number of sick would have been greatly reduced";

**s.**      On January 20, 2020, the Mayor of Wuhan Zhou Xianwang admitted that Beijing's rules kept him from disclosing information about COVID-19.  Therefore, the Defendants' failure to be transparent with the public, and failure to confront the COVID-19 crisis by ordering a quarantine for almost two months, was central to a pandemic occurring because the infection spread in an exponential manner.  According to scientists almost 99% of the world's infections could have been avoided if the Defendants had acted properly in early December, 2019;

**t.**      On January 22, 2020, the President of PRC Xi Jinping stated that he had ordered local officials to contain the virus as early as January 3, 2020. However, President Jinping's position on January 22, 2020 is directly contradicted by the statements of the local Wuhan governmental officials;

**u.**      On January 23, 2020, the City of Wuhan was ordered locked down.  However, 5 million people had already left the city without being screened by that time, and nobody knows where these 5 million people travelled to;

**v.**      On January 30, 2020, the first person to person case in the US is reported. This involved the husband of a Chicago woman who brought the infection back from Wuhan, China;

**w.**      On February 6, 2020, to further control the narrative of "everything is under control", President Jinping orders China's Internet watch dog to further control social media platforms.  On that same day, journalist and attorney Chen Qiushi, disappeared in Wuhan after posting footage from overcrowded hospitals and panicking families;

**x.**      On February 7, 2020, Dr. Li Wenliang, who was one of the first whistle blowers regarding CORVID-19, died. The PRC disclosed that Dr. Wenliang allegedly died after contracting coronavirus from a patient that he was treating.  Several civil rights groups have alleged that Dr. Wenliang was killed in order to silence him;



1      **y.**    On February 9, 2020, journalist Fang Bin mysteriously disappeared after posting

2  videos about the CORVID-19 crisis in Wuhan.

3      **z.**    On February 15, 2020, President Jinping further tightened control over the internet.

4  On that same day Chinese activist Xu Zhiyong was arrested for writing an essay that called upon

5  President Jinping to resign for his poor handling of the coronavirus pandemic;

6      **aa.**    On February 16, 2020, Chinese Professor Xu Zhangrun was arrested and banned

7  from using the internet after he published an article stating that: "That the coronavirus epidemic

8  has revealed the rotten core of Chinese governance";

9      **bb.**    On March 11, 2020, the WHO declared that CORVID- 19 was a pandemic after it

10  had spread to over 100 countries;

11      **cc.**    On March 14, 2020, another Chinese reporter, Ren Zhiqiang, disappeared after he

12  criticized President Jinping's handling of the coronavirus epidemic;

13      **dd.**    On March 17, 2020, the PRC ordered journalists from the New York Times, Wall

14  Street Journal and Washington Post to leave the country after they continued to report the out of

15  control pandemic in China and that country's citizens' complaints;

16      **ee.**    On March 19, 2020, after there was wide spread unrest in the PRC, the government

17  publically announced that the Wuhan police had acted improperly when they had previously

18  stated that whistle blower Dr. Li Wenliang was "spreading rumors" about the coronavirus in early

19  January, 2020.  However, even this 'admission' was misleading because Dr. Wenliang first

20  complained in late December, 2019 and his statements pertained to the existence of a "new" and

21  deadly virus; and

22      **ff.**    As of March 22, 2020, the PRC's narrative is that the pandemic is under control

23  in China and there are very few new deaths in China related to COVID-19.  However, this PRC

24  narrative is contradicted by Chinese Billionaire Guo Wengui who has stated that the Chinese

25  government continues to underreport illnesses and deaths because they are currently using

26  portable incubators to cremate up to 1,200 bodies a day.  Significantly, Mr. Wengui's claims are

27  supported by many scientists, who seriously doubt that the PRC, which has over 1.3 Billion

28

people, and had over 100,000 infected people only a few weeks ago, suddenly experienced a miracle that has resulted in "no new deaths".

43.     It is reported that there are only two known Chinese government bio-weapon research labs in the PRC and one of them — the National Biosafety Laboratory at the Wuhan Institute of Virology — is located in Wuhan, and is close in proximity to the Human Seafood Wholesale Market, where COVID-19 allegedly originated.  This lab is considered China's only "level 4" microbiology lab – meaning it deals with the deadliest viruses.  A plausible alternative theory is that COVID-19 escaped from the Wuhan lab because of lax controls, or that Chinese researchers sold lab animals to the marketplace in question, something researchers have been known to do in China, instead of cremating them as PRC law requires.

44.     The Defendants' conduct has set off an unprecedented world-wide pandemic, which has caused panic, illnesses, deaths, and a global recession financial meltdown that will result in a global recession worse than the great depression.  This global recession will also impact the US and the Plaintiff Class Members.

45.     The Defendants' conduct and misconduct has been egregious, contrary to the precepts of humanity, and/or is prohibited by the internal laws of the PRC and its provincial and municipal governments, and/or international laws and treaties.

46.     Because of the Defendants' conduct and misconduct, as described herein, the Named Plaintiffs and Class Members, have sustained, and they will continue to sustain, substantial damages, including monetary loss in the trillions of dollars.

47.     This pandemic has already adversely affected the Plaintiffs and Class Plaintiffs in the United States, including in the State of Nevada.

48.     All condition precedents to the filing of this class action lawsuit has been satisfied, met, and/or waived.

## CLASS ACTION ALLEGTIONS

49.     The Named Plaintiffs assert National and Nevada Non-Commercial Tort Classes against Defendants pursuant to Rules 23(a), (b) (1), (b) (2), (b) (3) and/or 23(c)(4) of the Federal

Rules of Civil Procedure, on behalf of themselves and all those similarly situated.  The Named Plaintiffs and Class Plaintiffs define the National Non-Commercial Tort Class as follows:

All small businesses in the United States, including the State of Nevada, which have sustained, among other things, financial/monetary damages and/or losses related to the outbreak of the COVID-19 virus.

**50.**     The Named Plaintiffs further assert National and Nevada Commercial Classes, pursuant to Rules 23(a), (b) (1), (b) (2), (b) (3) and/or 23(c) (4) of the Federal Rules of Civil Procedure, on behalf of themselves and all those similarly situated.  The Named Plaintiffs and Class Plaintiffs define the National Commercial Class as follows:

All small businesses in the United States, including the State of Nevada, which have sustained, among other things, financial/monetary damages and/or losses related to the outbreak of the COVID-19.

**51.** Excluded from the Class are the following: (1) the Defendants, and any parent, subsidiary or affiliate organizations, and the officers, directors, agents, servants, or employees of same, and the members of the immediate family of any such person; (2) all small businesses in the US who timely opt out of this proceeding; (3) all small businesses that have been given valid releases releasing Defendants from the claims asserted in this Class Action Complaint; (4) all persons who, prior to the filing of this Complaint, have filed a non - class action claim against the Defendants (or any of them) for the claims asserted in this Complaint; and (5) the judge(s) to whom this case is assigned, their employees and clerks, and immediate family members.

**52.**     The Class is sufficiently numerous, and as a result, the joinder of all members of the Class in a single action is impracticable. There are over 32 Million Small Businesses in the US, and a substantial majority of these small businesses and any of their affiliated entities, have been, or will be affected financially, in the immediate future by Defendants' wrongful conduct.

**53.**     There are numerous common questions of law and fact that predominate over any questions affecting only individual members of the Class. Among these common questions of law and fact are the following:

14

**a.**     Whether Defendants' conduct was negligent and/or reckless;

**b.**     Whether Defendants' conduct was clearly contrary to the precepts of humanity;

**c.**     Whether Defendants' conduct violated established laws within the PRC;

**d.**     Whether the PRC's bio-weapons labs are ultra-hazardous activities, and caused the release of the virus;

**e.**     Whether the PRC violated the rules and regulations of the WHO; and

**f.**     Whether the PRC engaged in an intentional cover-up in order for the international community and the Plaintiff Class not to discover what was taking place with the COVID-19 pandemic.

54.     The claims of the Named Plaintiffs are typical of the claims of each member of the Class in that, among other issues:

**a.**     The Named Plaintiffs' claims arise from the same course of conduct of Defendants giving rise to the claims of other Class Members;

**b.**     The claims of the Named Plaintiffs and each member of the Class are based upon the same legal theories;

**c.**     The Named Plaintiffs and each member of the Class have an interest in prevailing on the same legal claims;

**d.**     The types of financial damages incurred by the Named Plaintiffs are similar to those incurred by the other Class Members; and

**e.**     The defenses asserted by Defendants will be very similar, if not identical, as to all Named Plaintiffs and Class Members.

55.     The Named Plaintiffs are adequate representatives of the Class in which they participate because, together with their legal counsel, each will fairly and adequately protect the interests of the Class. Named Plaintiffs and all Class Members have a similar, if not identical interest in obtaining the relief sought. Proof of the claims of the Named Plaintiffs will also establish the claims of the Class. Named Plaintiffs are not subject to any unique defenses. Named

15

1  Plaintiffs have no known conflict with the Class and are committed to the vigorous prosecution

2  of this action.

3       **56.**    The undersigned counsel are competent counsel experienced in class action

4  litigation, mass torts, and complex litigation involving such widespread harm. Counsel will fairly

5  and adequately protect the interests of the Class.

6       **57.**    The various claims asserted in this action are certifiable under the provisions of

7  Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against

8  individual Class Members would create a risk of inconsistent or varying adjudications with

9  respect to individual Class Members that would establish incompatible standards of conduct for

10  the party opposing the Classes, or adjudications with respect to individual Class Members that,

11  as a practical matter, would be dispositive of the interests of the other Class Members who are

12  not parties to the individual adjudications, or would substantially impair or impede their ability

13  to protect their interests.

14       **58.**    Plaintiffs' legal claims are properly certified pursuant to Rule 23(b) (3) in that: (1)

15  a class action is superior in this case to other methods of dispute resolution; (2) the Class Members

16  have an interest in class adjudication rather than individual adjudication because of their

17  overlapping rights; (3) it is highly desirable to concentrate the resolution of these claims in this

18  single forum because it would be difficult and highly unlikely that the affected Class Members

19  would protect their rights on their own without this class action case; (4) the disparity between

20  the resources of Defendants and Class Members would make prosecution of individual actions a

21  financial hardship on Class Members; (5) the prosecution of separate actions by individual Class

22  Members, or the individual joinder of all Class Members is impractical and would create a

23  massive and unnecessary burden on the Court's resources; and (6) Management of the class will

24  be efficient and far superior to the management of individual lawsuits.  Moreover, currently, the

25  undersigned counsel is unaware of any other pending litigation regarding this controversy with

26  respect to the specific small business claims asserted in this case.

27       **59.**    The issues particularly common to the Class Members' claims, some of which are

28  identified above, are alternatively certifiable pursuant to Fed. R. Civ. P. 23(c) (4), as resolution

of these issues would materially advance the litigation, and class resolution of these issues is superior to repeated litigation of these issues in separate trials.

**60.** The Named Plaintiffs have retained the below counsel to represent them in this lawsuit, and are obligated to pay said counsel reasonable attorneys' fees provided recovery is obtained.

**COUNT I – NEGLIGENCE**

**(Named Plaintiffs and each Class Member; Against all Defendants)**

The Named Plaintiffs adopt, incorporate by reference, and restate the foregoing allegations in paragraphs 1 through 60, as if fully set forth herein, and further allege:

**61.** Defendants owed a duty to small businesses in the United States and in the States of Nevada and Illinois, including the Named Plaintiffs and the Class Members, to not act negligently in their management and handling of the COVID-19 outbreak, so that COVID-19 would not unreasonably spread as it did to the United States, including the States of Nevada and Illinois.

**62.** Defendants breached their duty to Plaintiffs and the Class Members, by, among other things:

**a.** Failing to admit their knowledge of the dangers of the virus, its lethalness, and the ease of human to human transmission;

**b.** Failing to contain the virus in its early stages when they knew, or should have known, of its dangers and ease of transmission;

**c.** Failing to contain the virus more quickly when the spread was apparent;

**d.** Failing to restrict public gatherings of more than 40,000 Wuhan families when they knew, or should have known, of the dangers of the virus and ease of transmission;

**e.** Failure of the governmental entities to adequately and reasonably supervise the outbreak and contain its effects after the medical community warned them about these dangers;

**f.** Failing to provide adequate and reasonable warnings to Plaintiffs and the Class Members when they knew or should have known of the dangers described herein;

17

**g.**     Disseminating materials and statements that provided wrong information to people within and outside China;

**h.**     Destroying scientific evidence and data, so the Plaintiffs and the Plaintiff class members could not know or learn about what was really occurring in China;

**i.**     Disseminating false information to the US, which made it impossible to know or learn what was really taking place in China with COVID-19; and

**j.**     Engaging in a cover-up regarding the severity of the COVID-19 pandemic, which made it impossible for the US and the Plaintiffs to know, or learn, what was really occurring in China, and how this could affect their businesses.

**63.**     But for Defendants' wrongful and negligent duties owed to Plaintiffs and Class Members, Plaintiffs' and Class Members' business would not have been harmed.

**64.**     There is a temporal and close causal connection between Defendants' actions described herein and the harm suffered, or the risk of imminent harm suffered by Plaintiffs and the Class.

**65.**     Defendants knew or should have known that their actions, described herein, would cause global harm to businesses, including to Plaintiffs and Class Members and that the risk of such harm was highly likely. Defendants acted in conscious disregard of such foreseeable risk. Defendants' actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiffs and Class Members warranting the imposition of exemplary or punitive damages against Defendants.

**66.**     As a direct and proximate result of Defendants' breaches as described herein, Plaintiffs and the Class Members sustained hundreds of Billions or Trillions of dollars in financial damages and/or economic loses, and seek actual, special, exemplary, punitive and compensatory damages.

. . .

. . .

. . .

. . .

18

## COUNT II – STRICT LIABILITY FOR CONDUCTING
## ULTRAHAZARDOUS ACTIVITY

**(Named Plaintiffs and each Class Member; Against all Defendants)**

Named Plaintiffs and Plaintiff Class Members adopt, incorporate by reference, and restate the foregoing allegations in paragraphs 1 through 66, as if fully set forth herein, and further allege:

**67.**　Upon information and belief, the only two registered bio-weapons laboratories in the PRC are located in the City of Wuhan, and one of them, the National Biosafety Laboratory at the Wuhan Institute of Virology, is the only declared site in China capable of working with deadly viruses, and handles, according to various press accounts, covert military applications of viruses.

**68.**　In February, 2020 after the PRC's President Xi Jinping finally began speaking openly about the outbreak and its spread, it was reported by the media that the Chinese Ministry of Science and Technology released a new directive titled: "Instructions on strengthening biosecurity management in microbiology labs that handle advanced viruses like the novel coronavirus." Clearly, Defendants knew or should have known about containment issues within their microbiology labs, such as the ones operating in Wuhan, and that those labs handling viruses such as COVID-19.

**69.**　The Wuhan laboratories are in close proximity to the "wild animal" marketplace where COVID-19 is alleged to have originated.

**70.**　Furthermore, it has been reported in the media that some Chinese researchers are in the habit of selling their laboratory animals to street vendors after they have finished experimenting on them, instead of properly disposing of infected animals by cremation, as the law requires.

**71.**　The conduct of Defendants in connection with activities at the National Biosafety Laboratory constitutes an ultra-hazardous activity under US and Nevada law because:

**a.**　The conduct necessarily involves a risk of serious harm to the person, land, property or chattels of others which cannot be eliminated by the exercise of the utmost care;

**b.**　The activities at the lab are not a matter of common usage; and

**c.**　The activity is not of substantial value to any community.

19

**72.**     The harms alleged herein are the result of Defendants' ultra-hazardous activity.

**73.**     The harms suffered by the Plaintiffs and the Class Members are within the abnormal risk of harm posed by Defendants' ultra-hazardous activity.

**74.**     By conducting this ultra-hazardous activity, the Defendants' acts and omissions demonstrate a conscious disregard or indifference to the rights, welfare, safety, and property rights of Plaintiffs and the Class Members.

**75.**     But for Defendants' wrongful and negligent duties owed to Plaintiffs and Class Members, Plaintiffs' and Class Members' business would not have been harmed.

**76.**     There is a temporal and close causal connection between Defendants' actions described herein and the harm suffered, or the risk of imminent harm suffered by Plaintiffs and the Class.

**77.**     Defendants knew or should have known that their actions, described herein, would cause global harm to businesses, including to Plaintiffs and Class Members and that the risk of such harm was highly likely. Defendants acted in conscious disregard of such foreseeable risk. Defendants' actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiffs and Class Members warranting the imposition of exemplary or punitive damages against Defendants.

**78.**     As a direct and proximate result of Defendants' ultra-hazardous activity, as described herein, the Plaintiffs and the Class Members have been injured and harmed, and have suffered damages and economic loses, and seek actual, special, exemplary, punitive and compensatory damages.

**79.**     Because the Defendants engaged in ultra-hazardous activity that caused hundreds of Billions or Trillions of dollars in damages to Plaintiffs and the Class Members, Defendants are strictly liable to them for their damages.

<u>**COUNT III – PUBLIC NUISANCE**</u>

**(Named Plaintiffs and each Class Member Against all Defendants).**

The Named Plaintiffs adopt, incorporate by reference, and restate the foregoing allegations in paragraphs 1 through 79, as if fully set forth herein, and further allege:

20

80.     Defendants, and more specifically the PRC, Hubei Province and the City of Wuhan, had a duty to the public at large, including Named Plaintiffs and members of the class, not to use the property where the Wuhan Institute of Virology is located, and/or create a condition that harms public health.

81.     Defendants, and more specifically the PRC, Hubei Province and the City of Wuhan, had a duty to the public at large, including Named Plaintiffs and members of the classes, not to use the city and province as, essentially a giant Petri dish, continuing to conduct extraordinarily large public gatherings, knowing of the dangers of the virus and the ease of transmission.

82.     Defendants, and more specifically the PRC, Hubei Province and the City of Wuhan, breached that duty through the conduct described herein, including by allowing COVID-19 to escape into Wuhan and/or flourish in Wuhan and Hubei, and thereby become a pandemic.

83.     Defendants' conduct has created a nuisance that violated rights, subverted public order in the United States and Nevada, is indecent and immoral, and has caused annoyance, inconvenience and damage to the public, including the small businesses operated by the Named Plaintiffs and the members of the classes.

84.     The Defendants' conduct and created nuisance has resulted in unreasonable injury to Plaintiffs and the Class Members.

85.     But for Defendants' wrongful and negligent duties owed to Plaintiffs and Class Members, Plaintiffs' and Class Members' business would not have been harmed.

86.     There is a temporal and close causal connection between Defendants' actions described herein and the harm suffered, or the risk of imminent harm suffered by Plaintiffs and the Class.

87.     Defendants knew or should have known that their actions, described herein, would cause global harm to businesses, including to Plaintiffs and Class Members and that the risk of such harm was highly likely. Defendants acted in conscious disregard of such foreseeable risk. Defendants' actions in engaging in the above-named unlawful practices and acts were negligent,

21

1     knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiffs and Class

2     Members warranting the imposition of exemplary or punitive damages against Defendants.

3          **88.** As a direct and proximate result of Defendants' nuisance, Plaintiffs and the Class

4     Members will continue to suffer harms in the form of lost revenue and lost profits, and such harms

5     will require ongoing future abatement if Plaintiffs' and the Class Members' businesses are to be

6     operational, functional, and profitable.

7          **89.** As a direct and proximate result of Defendants' nuisance, as described herein,

8     Plaintiffs and the Class Members have been injured and harmed, and have sustained financial

9     damages and economic loses, and seek actual, special, exemplary, punitive and compensatory

10     damages.

11                        **<u>PRAYER FOR RELIEF</u>**

12          WHEREFORE, the Named Plaintiffs, Bella Vita LLC, Greenfield & Company Inc., Life

13     Real Estate LLC, Mobile Medic CPR Training LLC and DT Group LLC, on behalf of themselves

14     and as class representatives for all those similarly situated, demand judgment against Defendants,

15     and pray for the following relief :

16          **a.** Certification of the Class under Federal Rule of Civil Procedure 23 and

17     appointment of Plaintiffs as representatives of the respective Class and their undersigned counsel

18     as Class counsel;

19          **b.** An order requiring that Defendants pay compensatory and other damages to

20     Plaintiffs and the Class Members, for their economic and non-economic damages and losses

21     identified herein, to the full extent permitted by the law;

22          **c.** An order awarding all damages allowed by any governing statutes or other

23     governing law;

24          d. An order awarding exemplary or punitive damages related to Defendants'

25     fraudulent, extreme, outrageous, malicious, oppressive conduct that was performed in conscious

26     disregard of the health and safety of American citizens and Nevada residents.

27          **d.** Statutory pre-judgment and post-judgment interest on any amounts awarded;

28

1    **e.**     Costs and expenses in this litigation, including, but not limited to, expert fees, filing

2    fees, and reasonable attorneys' fees; and

3    **f.**     Such other relief as this Court deems just and proper.

4    <u>**DEMAND FOR JURY TRIAL**</u>

5    The Named Plaintiffs, on their own behalf and on behalf the Class Members, demand a

6    trial by jury on all issues so triable.

7    Dated this 23ʳᵈ day of March, 2020.

8

9    **EGLET ADAMS**

10    _/s/ Robert T. Eglet, Esq._____

11    ROBERT T. EGLET, ESQ.
Nevada Bar No. 3402

12    TRACY A. EGLET, ESQ.
Nevada Bar No. 6419

13    **EGLET ADAMS**

14    400 South Seventh Street, Suite 400
Las Vegas, NV 89101

15    Telephone: (702) 450-5400
Facsimile: (702) 450-5451

16    reglet@egletlaw.com

17    teglet@egletlaw.com
eservice@egletlaw.com

18

19

20

21

22

23

24

25

26

27

28

23